IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JALEH BANAEI,                              )
                                           )
             Plaintiff,                    )
                                           )
       v.                                  )   No. 10 C 6966
                                           )
CITY OF EVANSTON, OFFICER                  )
MESSING, Evanston Police Officer,          )
OFFICER NIZIOLEK, Evanston Police          )
Officer, and UNNAMED EVANSTON              )
POLICE OFFICERS,                           )
                                           )
             Defendants.                   )

## OPINION AND ORDER

Plaintiff Jaleh Banaei alleges that defendants Rebecca Niziolek and Timothy Messing, Evanston, Illinois police officers, arrested her without probable cause and improperly subjected her to a strip search.[1] Defendants move for summary judgment dismissing the remaining claims.

---

[1] Defendants City of Evanston and unnamed Evanston police officers were previously dismissed. Other claims were previously dismissed or dropped.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95

(7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Plaintiff has been represented by counsel throughout this lawsuit. Defendants complied with Local Rule 56.1(a)(3) by providing a paragraph-by-paragraph statement of facts supported by citations to the record. Plaintiff, however, failed to provide the response to that statement required by Local Rule 56.1(b)(3). Without responding directly to defendants' factual assertions, plaintiff's brief does recite certain facts and cites to her own affidavit in support thereof.[2] Since plaintiff fails to comply with Local Rule 56.1(b)(3), defendants' statement of facts could be treated as true for purposes of summary judgment.

---

[2] After briefing was completed, plaintiff filed a second personal affidavit. It does not add any additional material facts. It describes incidents occurring in May 2012. It is evidence of continuing emotional trauma and fear of the Evanston police that remains following the 2008 incident at issue in the present case. Plaintiff also provides medical records, but does not cite to nor discuss them in her brief. However, injury and damages are not issues relevant to the summary judgment motion.

N.D. Ill. L.R. 56.1(b)(3)(C); *see also* Fed. R. Civ. P. 56(e). It is, however, within this bench's discretion as to how strictly to enforce Local Rules. ***Trade Fin. Partners, LLC v. AAR Corp.***, 573 F.3d 401, 409 (7th Cir. 2009); ***Bordelon v. Chicago Sch. Reform Bd. of Tr.***, 233 F.3d 524, 527 (7th Cir. 2000); ***Zitzka v. Vill. of Westmont***, 743 F. Supp. 2d 887, 897 (N.D. Ill. 2010). Counsel's failure to comply with the rules is not condoned and counsel is admonished to henceforth familiarize himself with and comply with federal procedures and local rules. Nevertheless, this bench does not strictly enforce Rule 56.1 if a party, in some manageable form, asserts facts and provides citations to the record. *See* ***Bey v. Shinseki***, 2012 WL 4434651 *1 (N.D. Ill. Sept. 20, 2012); ***Morrow v. Potter***, 2011 WL 663029 *2 (N.D. Ill. Feb. 10, 2011). This case does not involve a complex set of facts. The additional factual assertions made by plaintiff will be considered in determining whether there are any genuine factual disputes.

In addition to pointing to plaintiff's failure to comply with Local Rule 56.1, defendants contend much of plaintiff's affidavit can be ignored because, absent an adequate explanation, it is improper to make statements in an affidavit that contradict the affiant's prior deposition testimony. *See* ***McCann v. Iroquois Mem'l Hosp.***, 622 F.3d 745, 750-51 (7th Cir. 2010); ***Walker v. Sheahan***, 526 F.3d

973, 979 (7th Cir. 2008); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 406-07 (7th Cir. 2008). As indicated below, though, plaintiff's affidavit is consistent with her deposition testimony.

Resolving all genuine factual disputes and making all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of ruling on defendants' motion for summary judgment are as follows. At 5:35 p.m. on October 31, 2008, defendants were dispatched to plaintiff's residence. Defendants were told that a report had been received that a gray-haired woman had struck a male. Prior to her arrest, plaintiff was not permitted to provide her version of events.[3] At the scene, Hentz told defendants that he unintentionally knocked over a bucket of paint, plaintiff became angry, approached him in a hostile manner, and

---

[3]According to defendant Niziolek, plaintiff told defendants that her tenant, Cornell Hentz, knocked over a bucket of paint and she responded by approaching him, getting in his face, and yelling at him. Niziolek Aff. ¶ 8. However, plaintiff states in her affidavit that defendants did not allow her to explain anything. Pl. Aff. ¶ 5 (citations to plaintiff's affidavit are to her first affidavit, Docket Entry [44]). That is consistent with her interrogatory answer: "Without asking me what happened, they arrested me! Not talking to me, not asking for or listening to my explanation of the events, telling me to shut up, arresting me, . . . ." Pl. Inter. Ans. ¶ 19. At plaintiff's deposition, only limited questions were asked about her arrest and nothing concerning what was said. Pl. Dep. 16-17. Plaintiff's affidavit does not contradict defendants' description of what other witnesses said. Defendants' version of what others said will be taken as true.

then bumped him with her chest sending him tumbling backward. Charisse Robinson told defendants she was the one who had called 911 and that she saw plaintiff loudly yelling at Hentz and then bumping him. Hentz said he wanted to make a formal complaint. Defendants placed plaintiff under arrest. At that point a crowd had gathered and defendants decided to transport plaintiff to the Evanston police station. Plaintiff was not patted down at the scene.[4]

At the police station, plaintiff was brought into the booking/processing room in the lower level. During the search that occurred, other police personnel (including males) were present in the room or passed through, but no other arrestees nor any other non-police personnel were present. Prior to searching her person, plaintiff's jewelry was removed and stored. Niziolek, a female, conducted the search of plaintiff's person. Messing, a male, stood four to five feet away, watching plaintiff, but not saying anything. Niziolek directed plaintiff to remove her socks and shoes and the bulky sweater she was wearing. Plaintiff requested that she not be required to remove the sweater, but Niziolek made her do so. Plaintiff was distraught and in tears. Underneath the sweater, plaintiff was

---

[4]As to being patted down at the scene, defendants accept plaintiff's testimony that she was not patted down. Pl. Dep. 31-32. Niziolek states that she did pat plaintiff down at the scene. Niziolek Aff. ¶ 12.

wearing a thin negligee or shirt-like undergarment for warmth. The undergarment was shear so that her skin and bra underneath were readily seen. Plaintiff was never made to remove this undergarment, nor her bra or pants. In plaintiff's words, "My bra never covered my entire breasts. The curves of my breasts were exposed outside of the bra from the sides and front." Pl. Aff. ¶ 9.[5] Niziolek

---

[5] At her deposition, plaintiff testified:
Q. But you were never unclothed, is that right?
A. Clothed so you could see me face up, everything, you could see it through the--through the lingerie you could see.
Q. Let me break it down a little bit more. Were you ever naked?
A. What do you consider by naked?
Q. Not wearing clothes?
A. I consider when you have something so thin and see through at the top I consider that naked.
Q. Were you ever naked below the waist?
A. No.
Q. To be clear you were wearing both a bra and another undergarment the entire time?
A. Yes. But the undergarment is not the undergarment like that shirt; or the undergarment is really something you have to put under your clothes, you cannot wear it without the clothes.
Pl. Dep. 36-37.

In response to an interrogatory regarding what bare skin was exposed, plaintiff stated: "Skin was visible through lingerie for entire body from neck to waist. Bras never cover a woman's entire breasts. I was embarrassed after the loose sweater was ordered to be removed. Twice I told her that underneath the sweater is see-through lingerie and that I would be very embarrassed if it were removed. I told her that I shouldn't have to take it off. I was crying and, roughly, she said to take my sweater off." Pl. Inter. Ans. ¶ 10.

Plaintiff's affidavit statement is not contradicted by her prior testimony.

thoroughly patted plaintiff down over her undergarment and pants, including between her breasts and legs. During the search, several of the other police personnel in the room, including men, laughed at plaintiff being searched. Pl. Aff. ¶¶ 12-13; Pl. Dep. 23.

After the search, plaintiff was placed in a lock-up cell without first being brought before a judge. Plaintiff was alone in the cell. Pl. Dep. 42. There is no evidence or contention regarding other detainees being in nearby cells, or even there being other nearby cells. Plaintiff was released after a couple hours without being brought before a judge.

To the extent plaintiff is pursuing a false arrest claim, defendants contend they are entitled to summary judgment because evidence does not support that plaintiff was arrested without probable cause, a necessary element of a false arrest claim. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011); **Williams v. Rodriguez**, 509 F.3d 392, 398 (7th Cir. 2007). Probable cause is an objective standard based on the information known to the officer at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir.2010); *Carmichael v. Vill. of Palatine*, 605 F.3d at 457. "[A]n arresting officer's state of mind (except for the facts that he knows)

is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153. "Probable cause requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Mucha*, 650 F.3d at 1056-57. An arrest is not invalid because the arresting officer was maliciously motivated. *Devenpeck*, 543 U.S. at 154; *Mucha*, 650 F.3d at 1057. "Subjective intent of the arresting officer, however it is determined (and of course subjective intent is always determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Devenpeck*, 543 U.S. at 154-55. *See also Jackson*, 627 F.3d at 638; *Carmichael*, 605 F.3d at 457. "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *United States v. McCauley*, 659 F.3d 645, 651 (7th Cir. 2011) (quoting *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001)). "The law gives a police officer latitude to make reasonable judgments in light of the circumstances. While an officer may not close his or her eyes to clearly exculpatory facts, the

Fourth Amendment does not require an officer with probable cause to arrest to wait while pursuing further investigation. In some situations, an officer may be required to conduct some investigation before making an arrest; in others, an officer may have probable cause for arrest without any need for investigation. Relevant factors include the information available to the officer, the gravity of the alleged crime, the danger of its imminent repetition, and the amount of time that has passed since the alleged crime." *Stokes*, 599 F.3d at 624-25. *See also Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000).

In the present case, the statements of victim Hentz and eyewitness Robinson, as well as the information provided to defendants when they were dispatched, were sufficient to establish probable cause that plaintiff had committed battery. While it may have been better practice to have at least asked some questions of plaintiff,[6] the information the officers already had was sufficiently reliable to establish probable cause even without questioning plaintiff. *Cf. Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680-81 (7th Cir. 2007); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Even if plaintiff had been questioned and denied bumping Hentz, the statements of Hentz and Robinson

---

[6]Niziolek testified that plaintiff was questioned at the scene. On summary judgment, however, plaintiff's contrary testimony must be taken as true.

would still have established probable cause.[7] Defendants are entitled to summary judgment dismissing plaintiff's false arrest claim.

Plaintiff's other claim is that she was improperly strip searched. Defendants contend she was patted down, not strip searched. Even if she was strip searched, defendants contend no special justification is needed to strip search an arrestee before placing her in a jail cell. In further support of the latter contention, in their reply defendants cite to **Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington**, 132 S. Ct. 1510 (2012), which was decided after defendants filed their motion and 11 days before plaintiff answered the motion. **Florence**, however, is distinguishable from the present case. **Florence** involved a policy of strip searching incoming inmates. See **United States v. Freeman**, 691 F.3d 893, 901 n.1 (7th Cir. 2012). Defendants present no evidence to support that Evanston has a policy of strip searching all detainees prior to placing them in a cell.[8]

---

[7]It is not assumed that there was an exigency to arrest plaintiff in light of a gathering crowd. Niziolek's statement is that plaintiff was arrested and subsequently the officers transported her away from the scene in light of the gathering crowd. Perhaps the crowd gathered before the actual arrest, but that is not an indisputable fact based on Niziolek's affidavit.

[8]Plaintiff provides Evanston Police Department General Order 7.2, which is part of the Department's Police Manual and pertains to searches incident to arrests and incident to serving legal process. It does not address searches upon booking an arrestee or placing a person in the police station lock-up. It would not

Moreover, ***Florence*** does not decide the question of whether an arrestee who has not first been before a judge or magistrate and who is not being placed with other inmates may be strip searched as a matter of routine practice. *See **Florence***, 132 S. Ct. at 1522-23; 1523 (Roberts, C.J., concurring), 1524-25 (Alito, J., concurring), 1532 (Breyer, J., dissenting); ***Fonder v. Sheriff of Kankakee Cnty.***, 2012 WL 4321714 *5-6 (C.D. Ill. Aug. 31, 2012), *mag. j. report adopted*, 2012 WL 4321710 (C.D. Ill. Sept. 18, 2012). In any event, since the undisputed evidence establishes that plaintiff was not strip searched as that term is generally understood and adequate justification existed to conduct the search that occurred, it is unnecessary to consider the question of whether an arrestee being placed in a

---

appear to be applicable to the search of plaintiff while being booked at the station and prior to being placed in the lock-up. If this Order's Section V "strip-search" provisions were applicable to plaintiff's situation, her search was not consistent with the policies stated therein. This section defines a "strip-search" as including removing some of an arrestee's clothing to permit a visual inspection of undergarments, which is what happened to plaintiff. A person arrested for a misdemeanor is not to be subjected to such a search. (As to probable cause for an arrest, defendants rely on plaintiff committing a battery in violation of 720 ILCS 5/12-3, which would be a misdemeanor.) This section also provides that the search is to be conducted only by a person of the same sex and persons not physically conducting the search are not to be present. It also requires written authorization of the searching officer's supervisor and a copy of the authorization form is to be provided to the person searched. There is no evidence such authorization was obtained. Regardless of whether this provision applies to the search of plaintiff, there is no evidence that the search was conducted pursuant to a policy or practice of the Evanston Police Department.

single cell separate from any other detainees can be strip searched as a matter of routine security practices at a jail.

As noted in *Florence*, 132 S. Ct. at 1515, "strip search" is an "imprecise" term. "It may refer simply to the instruction to remove clothing while an officer observes from a distance of, say, five feet or more; it may mean a visual inspection from a closer, more uncomfortable distance; it may include directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there; or it may involve instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position. In the instant case, the term does not include any touching of unclothed areas by the inspecting officer." *Id.* In the Seventh Circuit, strip search generally refers to "a visual inspection of a naked inmate without intrusion into the person's body cavities."[9] *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 695 (7th Cir. 1998). *See also, e.g., King v.*

---

[9]The claim before the court is a federal constitutional claim. State law definitions of a strip search that are cited by plaintiff are not pertinent to determining whether the search that was conducted violated the federal Constitution. Also, plaintiff mischaracterizes *Safford v. Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009). In that case, the plaintiff was required to pull back her bra and underwear, exposing her breasts and pelvic area. *See id.* at 369, 374. It is not a case involving only the exposure of the arrestee's bra and panties.

*Schieferdecker*, 2011 WL 2636826 *1 n.1 (C.D. Ill. July 6, 2011); *Batchelor v. Fenwick*, 710 F. Supp. 2d 811, 821 (S.D. Ind. 2010); *Young v. Cnty. of Cook*, 616 F. Supp. 2d 834, 838, *reconsideration denied*, 616 F. Supp. 2d 856 (N.D. Ill. 2009); *May v. Frisbie*, 2009 WL 792084 *2-3 (S.D. Ind. Mar 23, 2009); *Calvin v. Sheriff of Will Cnty.*, 405 F. Supp. 2d 933, 938-39 (N.D. Ill. 2005), *amended*, 2006 WL 1005141 (N.D. Ill. April 14, 2006); *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 615 (W.D. Wis. 2003). *But see Stanley v. Henson*, 337 F.3d 961, 963-64 (7th Cir. 2003) (eschewing need to define whether stripping down to undergarments is a strip search, instead focusing on whether there was adequate support for the scope and manner of the search that was conducted).[10] "[W]hile all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994). *See also Stanley*, 337 F.3d at 965. Still, there is no absolute prohibition on enforcement personnel participating in observations of naked members of the opposite sex. *See Canedy*, 16 F.3d at 185-87; *Johnson v. Phelan*, 69 F.3d 144,

---

[10]In *Stanley*, the plaintiff would not have been required to remove any underwear, but her breasts were exposed because she was not wearing a bra. She was inspected in a private room with one female officer present.

146-47 (7th Cir. 1995); *Gelford v. Franks*, 2007 WL 5582586 *4 (W.D. Wis. Sept. 29, 2007), *aff'd by unpublished order*, 310 F. App'x 887 (7th Cir. 2008); *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1131 (W.D. Wis. 2007); *McCullar v. Babb*, 2006 WL 623604 *5-6 (N.D. Ind. March 10, 2006).

Plaintiff does not dispute that an arrestee or detainee may be subjected to a thorough, over-the-clothes pat down without the need of a justification other than being lawfully arrested. *See United States v. Robinson*, 414 U.S. 218, 235 (1973); *United States v. Thomas*, 512 F.3d 383, 387-88 (7th Cir. 2008); *Anderson v. City of W. Bend Police Dep't*, 774 F. Supp. 2d 925, 945 (E.D. Wis. 2011); *United States v. Johnson*, 2008 WL 187559 *5 (C.D. Ill. Jan. 18, 2008), *aff'd by unpublished order*, 331 F. App'x 408 (7th Cir. 2009). Plaintiff was wearing a bulky sweater, which would have interfered with conducting a pat-down search. Having plaintiff remove her sweater was not unreasonable under the circumstances. The pat down was conducted by a female with the male officer standing a short distance away. Plaintiff still had her pants on and her bra, which is less intrusive than having her entire breasts or genitalia and buttocks exposed. Even though plaintiff found it personally embarrassing to have her bra and the portions of her breasts that were not covered by the bra exposed, it was not

constitutionally unreasonable to conduct such a search of an arrestee, even with males in the room. Defendants are entitled to summary judgment on plaintiff's unreasonable search claim.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [38] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 21, 2012