NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 26, 2013[*]
Decided December 3, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-3516 | |
| JALEH BANAEI, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff–Appellant*, | |
| v. | No. 10 C 6966 |
| TIMOTHY MESSING and REBECCA NIZIOLEK, | William T. Hart, |
| *Defendants–Appellees*. | *Judge*. |

**O R D E R**

Jaleh Banaei appeals the grant of summary judgment against her in this action under 42 U.S.C. § 1983, asserting that two Evanston police officers falsely arrested and unlawfully strip searched her in violation of the Fourth and Fourteenth Amendments. We affirm the grant of summary judgment on Banaei's false-arrest claim, but also conclude that Banaei

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

Case: 1:10-cv-06966 Document #: 80 Filed: 01/03/14 Page 2 of 6 PageID #:503
Case: 12-3516    Document: 00712144744    Filed: 01/03/2014    Pages: 6

No. 12-3516                                                                                    Page 2

has offered sufficient evidence for a jury to find that she was unlawfully strip searched. We therefore vacate the judgment in part and remand for further proceedings.

Because we are reviewing a grant of summary judgment, we recount the facts in the light most favorable to Banaei, the nonmoving party. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Banaei is a 60-year-old woman who owns and rents out several residential buildings in Evanston, Illinois. One evening in October 2008, the Evanston Police Department dispatched Officers Rebecca Niziolek and Timothy Messing to a residence owned by Banaei after a witness called 911 and reported that a woman with long grey hair had struck a man. When Niziolek and Messing arrived at the scene, the man—one of Banaei's tenants—told them that he had accidentally knocked over a bucket of Banaei's paint and that she had then become angry and "bump[ed] him in the chest." The witness who had made the 911 call was also at the scene and told the officers that she had seen Banaei yelling at the tenant and bumping him with her chest. The officers did not question Banaei. The tenant said that he wanted to make a formal complaint, so the officers arrested Banaei, handcuffed her, and drove her to the police station.

At the station, Niziolek and Messing took Banaei to a booking room on the lower level, where a number of other male and female police personnel were present. Niziolek told Banaei to remove her jewelry, and she did so. Niziolek, the female officer, then instructed Banaei to take off her shoes, socks, and her "thick" sweater. Banaei objected, telling Niziolek that under the sweater she was wearing only a bra and see-through lingerie. Niziolek disregarded Banaei's protests and ordered her to remove the sweater. Banaei then took the sweater off, exposing her sheer undergarment, through which her bra and parts of her breasts were visible, as was the rest of her skin from her neck to her waist. By this point, Banaei was in tears; nonetheless, Niziolek thoroughly patted her down over her undergarment and pants, including between her breasts and legs.

Several other officers, including men, watched Banaei disrobe, finding it amusing. Messing, the male officer, viewed the entire search from four or five feet away. Other police personnel, male and female, also watched the search from nearby and snickered at Banaei as she cried. The search was not conducted under any policy of the Evanston Police Department. After the search, the officers placed Banaei in an empty cell at the station. Banaei was not brought before a judge and was released a couple of hours later. She was charged with misdemeanor battery, but the charges were later dropped.

Banaei sued the City of Evanston, Niziolek, Messing, and several unnamed police officers in federal court. In addition to her constitutional claims of false arrest and unlawful

No. 12-3516 Page 3

strip search, she brought an equal-protection claim and several state-law claims. The district court dismissed most of Banaei's complaint, but allowed her to proceed against Niziolek and Messing on her constitutional claims of false arrest and unlawful strip search.

The district court granted the officers' motion for summary judgment on both claims. The court concluded that Banaei's false arrest claim could not survive summary judgment because she failed to present evidence showing that the officers lacked probable cause to arrest her. The court credited Banaei's testimony that the officers did not question her at the scene but explained that the statements of the tenant and the eyewitness were sufficient to establish probable cause that Banaei had committed misdemeanor battery. Regarding the strip-search claim, the court acknowledged that the search was not conducted under any practice or policy of the Department. But the court concluded that summary judgment was nonetheless appropriate because Banaei "was not strip searched as that term is generally understood" and "there is no absolute prohibition on enforcement personnel participating in observations of naked members of the opposite sex." The court concluded that, under Banaei's account of the search, the police acted in a reasonable manner for two reasons. First, the "bulky" sweater would have interfered with the post-arrest pat-down, and a post-arrest pat-down is always lawful. Second, Banaei was still wearing her pants and her bra, so the search was "less intrusive than having her entire breasts or genitalia and buttocks exposed."

Banaei first contests the grant of summary judgment on her false-arrest claim. She argues that Niziolek and Messing lacked probable cause to arrest her because the tenant was in fact attacking *her* and working in tandem with the eyewitness. We agree with the district court, however, that Banaei failed to raise a genuine issue over the officers' probable cause to arrest her. *See McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009). No evidence in the record suggests that either Niziolek or Messing had any reason to doubt the credibility of the eyewitness or the tenant at the time of the arrest. "[A]s long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012) (internal quotation marks omitted); *see Abbott v. Sangamon Cnty.*, 705 F.3d 706, 716 (7th Cir. 2013). Furthermore, that the officers did not question her before the arrest is of no moment; as we have emphasized, "once probable cause has been established, officials have no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence." *Matthews*, 675 F.3d at 707 (internal quotation marks omitted).

No. 12-3516 Page 4

Banaei also challenges the grant of summary judgment to the officers on her strip-search claim. She contends that the search—which exposed her undergarments and parts of her breast to several chortling male police officers—was unreasonable because it was unnecessarily intrusive, non-private, and unjustified by any reasonable belief that she was concealing a weapon or contraband. Banaei maintains that the search was done to humiliate her; she acknowledges that this type of search might be appropriate in some extreme situations but argues that it was unjustified in her case because she was arrested for a misdemeanor offense that did not involve weapons or controlled substances.

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, "protects individuals against unreasonable searches of their persons, homes, and effects" and guarantees "the right to be free from unreasonable searches of one's unclothed body." *Stanley v. Henson*, 337 F.3d 961, 963 (7th Cir. 2003). The relevant test for ascertaining the reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *see Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007); *Stanley*, 337 F.3d at 964. In applying this balancing test, we "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *Campbell*, 499 F.3d at 716; *Stanley*, 337 F.3d at 964. The defendants argue that Banaei was not subjected to a "strip" search because she was never naked, but it is the *reasonableness* of the search that matters; whether the procedure at issue is "a 'strip search' or just a 'search' more appropriately goes to the question of the scope or manner of the intrusion involved." *Stanley*, 337 F.3d at 964 n.2; *see United States v. Edwards*, 666 F.3d 877, 882 (4th Cir.) (citing cases). Significantly, even if a strip search is justified, it may still be unreasonable if the manner of the search, including the place in which it is conducted, was unreasonable. *See Campbell*, 499 F.3d at 718–19.

We agree with Banaei that her unlawful-search claim should have survived summary judgment. In the context of an incarcerated person, where the legality of a search is judged under the strictures of the Eighth Amendment, a search "conducted in a harassing manner intended to humiliate and cause psychological pain" violates the Constitution. *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009) (reversing grant of summary judgment); *see Washington v. Hively*, 695 F.3d 641, 643–44 (7th Cir. 2012) (reversing grant of summary judgment); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (reversing dismissal). Even under this more exacting standard, Banaei's claim should have proceeded to trial: her evidence supports a reasonable inference that the defendants forced her to undress before an audience of men and women for their amusement.

Case: 1:10-cv-06966 Document #: 80 Filed: 01/03/14 Page 5 of 6 PageID #:506
Case: 12-3516   Document: 00712144744   Filed: 01/03/2014   Pages: 6

No. 12-3516                                                                                    Page 5

Moreover, Banaei was not even a prisoner; under the Fourth Amendment standards that apply in her post-arrest context, *see Stanley*, 337 F.3d at 963–64, the search as she describes it was unreasonable because the officers offer no evidence justifying why they conducted the search in the manner and place they did. A jury could conclude that no justification for the search existed and that the search was therefore unreasonable. *See Campbell*, 499 F.3d at 717–19 (concluding that search was unreasonable and reversing jury's finding in favor of defendant police officer who searched for drugs by doing a visual inspection of plaintiff's naked buttocks in an open backyard because "there was nothing before the jury that suggested any conceivable exigency that could be met only by strip-searching [the plaintiff] in public"); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572–75 (6th Cir. 2013) (affirming denial of corrections officers' motion for summary judgment where prisoner, a double amputee, was required to strip down to her underwear, search was visible to other inmates and prison personnel, officer smirked during the search, and no exigent circumstances provided justification for strip searching prisoner where others could see).

The record here does not reflect that the defendants were justified in searching Banaei in this manner. Defendants urge that an intrusive strip-search *can* be justified by an interest in "[m]aintaining institutional security as well as the safety of jail officers and inmates," *Stanley*, 337 F.3d at 966, but defendants have furnished no evidence—just supposition in their brief on appeal—of such a justification here, *contra id.* at 966 (search done pursuant to jail's policy, which warranted deference); *United States v. Brack*, 188 F.3d 748, 758 (7th Cir. 1999) (strip search based on reasonable suspicion that arrestee was carrying contraband); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1043 (7th Cir. 1995) (strip search based on reasonable suspicion that arrestee was hiding drugs). And we are not persuaded by the district judge's reasoning that "there is no absolute prohibition on enforcement personnel participating in observations of naked members of the opposite sex"; the lack of an absolute prohibition is not an endorsement. Even less persuasive is the judge's remark that the search was "less intrusive than having her entire breasts or genitalia and buttocks exposed"; an arrestee need not have been fully undressed for the search to be treated as a strip search. *Edwards*, 666 F.3d at 882 (citing cases).

The district judge implied that the strip-down search was justified because Banaei "was wearing a bulky sweater, which would have interfered with conducting a pat-down search." But the only evidence in the record about the sweater is Banaei's testimony from her deposition, where she described the sweater as "thick." This adjective does not establish that the sweater would have interfered with a pat-down. By inferring from this scant evidence that Banaei's sweater would have interfered with a pat-down search, the

No. 12-3516 Page 6

district court failed to make all reasonable inferences in her favor, as required at summary judgment. *See Williams v. City of Chicago*, — F.3d —, 2013 WL 5755539, at *9 (7th Cir. 2013); *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 451 (7th Cir. 2012). Further, even if the sweater would have interfered with a pat-down search, the defendants offered no evidence suggesting the search could not have been conducted in a private setting, such as the jail cell where Banaei was later held, free from the taunting jeers of male onlookers. *See Campbell*, 499 F.3d at 718 (concluding that a legitimate strip-search was nonetheless unreasonable because "the police inexplicably did not even afford [the plaintiff] the dignity of doing it in a private place" such as the lock-up facility). We reiterate that we have construed the facts in the light most favorable to Banaei, as we must, and express no opinion as to the ultimate merits of Banaei's strip-search claim; we decide only that it may proceed to trial.

The officers assert in a single sentence that they are entitled to qualified immunity but do not develop this argument apart from contending that they did not waive or forfeit their defense in their filings to *the district court*. But a "lone sentence[]" that "lack[s] any citation to governing law [is] insufficient to raise adequately an issue on appeal," *Wehrs v. Wells*, 688 F.3d 886, 891 n.2 (7th Cir. 2012); *see United States v. Stadfeld*, 689 F.3d 705, 712 (7th Cir. 2012); therefore, we do not consider whether qualified immunity applies here.

Accordingly, we **VACATE** the grant of summary judgment on Banaei's strip-search claim and **REMAND** the case for further proceedings. In all other respects, the judgment is **AFFIRMED**.